IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal No. 03-292-KI |
| | ) | |
| vs. | ) | OPINION |
| | ) | |
| JEFFREY M. CLARK, | ) | |
| | ) | |
| Defendant. | ) | |

    Karin J. Immergut
    United States Attorney
    District of Oregon
    Frank Noonan
    Assistant United States Attorney
    1000 S. W. Third Avenue, Suite 600
    Portland, Oregon 97204-2902

        Attorneys for Plaintiff

    Steven T. Wax
    Federal Public Defender
    101 S. W. Main Street, Suite 1700
    Portland, Oregon 97204

        Attorney for Defendant

Page 1 - OPINION

KING, Judge:

A federal grand jury issued a single count indictment of the defendant Jeffrey M. Clark ("Clark") on June 25, 2003 for knowingly producing, stockpiling, retaining and possessing ricin, a biological agent and toxin, for use as a weapon, in violation of 18 U.S.C. § 175(a). The activity underlying the arrest is alleged to have occurred on or about February 1, 1997 in Columbia County, Oregon.

Clark moves to dismiss on the following grounds: prosecution is barred by the statute of limitations (#19), prosecution is barred for destruction of evidence (#53), prosecution is barred by guarantees of due process without delay (#17), 18 U.S.C. § 175 is unconstitutionally vague and overbroad (#13), application of 18 U.S.C. § 175 is a violation of the ex post facto clause (#15), and 18 U.S.C. § 175 is an unlawful exercise of congressional authority (#21). I grant Clark's motion to dismiss prosecution as barred by the statute of limitations, and decline to reach a decision on the other motions to dismiss.

## ALLEGED FACTS

On April 23, 1996, Clark was charged by the state with unrelated conduct that allegedly took place in April 1995. In June 1996, Clark posted bail and was released pending resolution of that case. A warrant revoking pretrial release was issued on October 17, 1996, and Clark was taken into state custody on October 21, 1996. On February 6, 1997, Clark pled guilty to one count of the indictment, and the other counts were dismissed. Clark was transferred to Oregon State Hospital for evaluation.

In 1997 or 1998, a bucket was found under the house where defendant and his now ex-wife, Cathleen Clark, had lived together. A number of items were allegedly stored in the bucket,

including one or more videotapes, books and pamphlets, brown beans, and vials and packets containing white powder. Cathleen Clark turned over a videotape to the Oregon State Police that she found in the bucket.

Based on the videotape turned over to authorities, Columbia County brought a new indictment against defendant on July 30, 1998, charging him with a number of additional offenses involving the same conduct that was the subject of the 1996 indictment. These allegations also served as the basis for a probation warrant in the 1996 case.

In the fall of 1998, Clark was released pending resolution of the parole violation and the new state charges. He then fled the jurisdiction.

On or about October 28, 1998, Cathleen Clark brought what she represented were the rest of the contents of the bucket to the attention of the Oregon State Police. In order to assist the Oregon State Police, the FBI opened a case and forwarded some of the items from the bucket including the vials, the brown beans, and a packet labeled "ricin," to the United States Army Medical Research Institute of Infectious Diseases (USAMRIID) in January of 2001. It is unclear whether the FBI in Portland added the label "ricin" to the packet. The other items in the bucket, including the books and pamphlets, were retained until they were sent to the Oregon State Police crime laboratory for fingerprint testing in May of 2003.

On January 31, 2001, the suspected ricin was tested by staff at USAMRIID. The test results were reviewed and approved on February 7-8, 2001, and USAMRIID issued a report to the Portland FBI. The report identified some of the substances sent to the USAMRIID as ricin.

In December 2002 and January 2003, the FBI and the Oregon State Police interviewed Cathleen Clark and others.

The defendant was apprehended in the Phillippines and returned to state custody in February of 2002.

On May 16, 2003, the FBI sent to the Oregon State Police Forensic Laboratory the remaining items from the bucket that it had not sent to USAMRIID, such as the books and pamphlets. The Forensic Laboratory engaged in a fingerprint analysis of these items. The Oregon State Police Forensic Laboratory report stated that 66 latent fingerprints of value had been obtained from the items that originated in the bucket from which the alleged ricin had been taken, and that 58 prints capable of being tested had been compared with defendant's fingerprints. None of the prints matched defendant's.

On June 25, 2003, the federal government returned its indictment. The government offers no reasons for its delay of close to five years, measured from the time it received the alleged ricin to bringing the indictment.

On February 5, 2004, eight months after Clark was indicted, a Senior Oregon State Trooper sent a letter to the Evidence Manager at the Department of Defense, USAMRIID, authorizing destruction of "the biological evidence from the above referenced case, i.e. the biological agent ricin." The government also destroyed all other evidence that had been sent by the FBI to the USAMRIID, including the vials and brown beans, and other material susceptible to forensic testing. The letter did not authorize destruction of this other evidence. All of the items that the FBI had sent to the USAMRIID were destroyed. Although it was the FBI that had requested USAMRIID's assistance in testing the materials, neither the local FBI office nor the United States Attorney's Office was consulted prior to the destruction of the evidence.

The beans and white powders, including the ricin, were never dated. The materials were not subjected to forensic tests, and the alleged ricin underwent only preliminary screening to determine whether it was in fact ricin. Tests also indicated that the toxicity of the alleged ricin may have degraded over time.

## DISCUSSION

Clark moves to dismiss the indictment because it was brought outside the applicable statute of limitations, and moves to dismiss due to destruction of the evidence, pre- and post-indictment delay, that 18 U.S.C. § 175 is unconstitutionally vague and overbroad, that application of the statute is a violation of the *ex post facto* clause, and that adoption of the statute was an unlawful exercise of congressional authority.

With regard to Clark's motion to dismiss based on the statute of limitations, according to both parties, the statue of limitations that applies here is five years. 18 U.S.C. § 3282. That statute states as follows: "Except as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed." Id. The indictment of Clark charges the offense occurred on or about February 1, 1997. Therefore, according to Clark, the government had until January 31, 2002 to bring charges against him. Thus, the indictment on June 25, 2003 was untimely.

The government's sole argument is that 18 U.S.C. § 3290 tolls the statute of limitations. That statute provides: "No statute of limitations shall extend to any person fleeing from justice." In order for the tolling statute to apply, the government must prove by a preponderance of the evidence that the defendant knew he was wanted by the police and that the defendant failed to

submit to arrest. United States v. Gonsalves, 675 F.2d 1050, 1052 (9th Cir. 1982). The government argues that the statute was tolled from the fall of 1998 to February 2002, the period of time within which the defendant fled prosecution of state charges and from a warrant for a parole violation. The government asserts that "fleeing from justice" includes fleeing from this unrelated state prosecution, and therefore the statute of limitations was tolled.

According to the government, the Supreme Court, in its review of a predecessor statute, has recognized that it is proper to exclude from the statute of limitations the period of time in which a defendant was a fugitive on a state charge. Streep v. United States, 160 U.S. 128, 135 (1895). The government also urges me to follow the Tenth Circuit, in United States v. Morgan, 922 F.2d 1495, 1498 (10th Cir. 1991), which stated:

> The language of the Court's holding in Streep, and the statute itself, is clear and inclusive. Whether an individual is a fugitive from federal or state justice, his apprehension for subsequent unrelated federal crimes is necessarily hampered by his flight from justice. Therefore, the fact that [the defendant] was fleeing prosecution for unrelated state crimes offers him no assistance in his attempt to take advantage of the federal statute of limitations. [The defendant] was fleeing justice–be it state or federal–and thereby triggered the tolling provision of § 3290; he cannot now have the privilege of the federal statute of limitations.

Defendant responds that Streep involved a state warrant outstanding for the same conduct for which he was prosecuted federally. In addition, according to defendant, the Ninth Circuit has not extended section 3290 to include warrants stemming from state matters. United States v. Gonsalves, 675 F.2d at 1054 n.6. Clark argues that any ambiguity should be resolved in favor of him under the rule of lenity in construing criminal laws. United States v. Wiltberger, 18 U.S. (5 Wheat.) 76, 94 (1820).

I decline to accept the government's invitation to adopt the Tenth Circuit's logic in defining "fleeing from justice" to apply to unrelated state charges in the absence of Ninth Circuit

Page 6 - OPINION

or Supreme Court precedent to that effect. As defendant correctly notes, the Supreme Court in Streep concluded that for a defendant to be deemed fleeing from justice "it is not necessary that there should be an intent to avoid the justice of the United States, but it is sufficient that there is an intent to avoid the justice of the state having criminal jurisdiction over the same territory and the same act." Streep, 160 U.S. at 135. Similarly, while the Ninth Circuit has referred to the "unqualified language" of section 3290, it has also refused to accept the "broad proposition advanced by the government" that "concealing one's self with the intent to avoid state arrest or prosecution on unrelated charges constitutes fleeing from justice under § 3290" because these were not the facts presented by the case. Gonsalves, 75 F.2d at 1053 n.6.

Furthermore, one of the policies behind the tolling provision is to ensure that the government has an opportunity to investigate the case, which is made more difficult by an absent defendant. Id. at 1052. Here, the government has given no reason for its delay, due to a fugitive defendant or otherwise. The Oregon State Police received the alleged ricin in October 1998, but it was not until 2001 that the ricin was sent to USAMRIID for testing. The government could have had the testimony of Cathleen Clark and other witnesses who found the bucket as early as October 1998. Even when the government received the test results from USAMRIID in February of 2001, reporting that some of the material was ricin, the government continued to delay. In fact, the government waited an additional two years before it sent the balance of the items found in the bucket to the Oregon State Police Forensic Laboratory Division for fingerprinting. The Oregon State Police responded promptly with a report dated June 18, 2003 that contained no information inculpating Clark. Only then did the government present the case to the grand jury.

As explained by the Supreme Court:

> [t]he purpose of a statute of limitations is to limit exposure to criminal prosecution to a certain fixed period of time following the occurrence of those acts the legislature has decided to punish by criminal sanctions. Such a limitation is designed to protect individuals from having to defend themselves against charges when the basic facts may have become obscured by the passage of time and to minimize the danger of official punishment because of acts in the far-distant past. Such a time limit may also have the salutary effect of encouraging law enforcement officials promptly to investigate suspected criminal activity. For these reasons and others, we have stated before the principle that criminal limitations statutes are to be liberally interpreted in favor of repose. . . . And Congress has declared a policy that the statute of limitations should not be extended '[e]xcept as otherwise expressly provided by law.' 18 U.S.C. § 3282.

Toussie v. United States, 397 U.S. 112, 114-15 (1970) (citations omitted).

Keeping these principles in mind, the government, having provided no evidence that the defendant was fleeing from justice on a federal offense or from a state offense based on the same conduct as that charged here, does not get the benefit of section 3290 in tolling the statute of limitations.

Because the statute of limitations is not tolled under 18 U.S.C. § 3290, the government has brought the indictment too late.

Since I find that the statute of limitations bars prosecution of the defendant under 18 U.S.C. § 3290, I need not address Clark's motions to dismiss due to destruction of the evidence, pre- and post-indictment delay, that 18 U.S.C. § 175 is unconstitutionally vague and overbroad, that application of the statute is a violation of the *ex post facto* clause, and that adoption of the statute was an unlawful exercise of congressional authority.

///


///

## CONCLUSION

Defendant's Motion to Dismiss Prosecution as Barred by the Statute of Limitations (#19) is granted. I deny Clark's remaining motions, numbered 53, 17, 13, 15 and 21, as moot.

Dated this  21st  day of April, 2005.

                                         /s/ Garr M. King  
                                        Garr M. King  
                                        United States District Judge